# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CIVIL ACTION NO.** |
| | ] | **1:17-CR-00549-KOB-JHE** |
| **DAMON EUGENE ODEN,** | ] | |
| | ] | |
| **Defendant** | ] | |
| | ] | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Damon Oden's "Motion to Suppress." (Doc. 7). Mr. Oden is charged with violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and 21 U.S.C. § 841(a)(1) and (b)(1)(b) (unlawful possession with intent to distribute 5 grams or more of methamphetamine). Mr. Oden argues these charges are based on evidence obtained in an unconstitutional search and seizure.

After carefully considering the briefs and the testimony presented at the suppression hearing on this matter, the court will DENY Mr. Oden's motion to suppress.

# I. FACTUAL BACKGROUND

In May 2017, Mr. Oden was riding a bicycle down Oak Avenue in Sylacauga, Alabama. He was wearing a backpack on his shoulders and a pouch on his belt. At the end of Oak Avenue, he rode onto a trail through the woods to Brock Avenue. Meanwhile, Sylacauga Police Department and Talladega Drug Task Force Officers were patrolling the area based on recent unlawful breaking and entering of motor vehicles in the vicinity. The officers observed Mr. Oden enter the woods on his bicycle, so they drove approximately one-half mile to where the trail ended on Brock Avenue.

As Mr. Oden exited the trail on Brock Avenue, the officers arrived in their patrol vehicle. Chief Johnson and Lieutenant Whatley testified at the suppression hearing that after Mr. Oden dismounted his bicycle, the two officers recognized Mr. Oden from past encounters with him. Chief Johnson testified that he had heard rumors that Mr. Oden had been "hanging" with individuals suspected of shootings in a nearby housing community, and Lieutenant Whatley testified that, while arresting Mr. Oden for driving under the influence, he had previously discovered a gun in Mr. Oden's vehicle.

The officers observed that Mr. Oden was acting "very nervous," he had a bulge in his front pocket, and had something in his hand. When Chief Johnson asked Mr. Oden about being in the woods, Mr. Oden responded that he had not been in the woods, and only admitted it once Chief Johnson informed him that he had observed Mr. Oden as he exited. Chief Johnson testified that he then mentioned to Mr. Oden the rumors about Mr. Oden associating with individuals suspected of shootings in a nearby housing community, and then asked Mr. Oden if he was carrying a firearm.

When asked about the firearm, Mr. Oden suddenly moved his hands toward his waistband. Chief Johnson then reached and grabbed Mr. Oden's wrist to prevent Mr. Oden from withdrawing the object that was bulging in his pocket. While Chief Johnson was still holding Mr. Oden's wrist, Lieutenant Whatley observed a firearm in Mr. Oden's pocket and removed it.

After confiscating the firearm, the officers recovered from Mr. Oden's hand a coffee filter containing what the officers suspected to be methamphetamine in a plastic bag. The officers also found methamphetamine, empty plastic bags, and a set of digital scales in Mr. Oden's pouch and backpack. Lab tests ultimately

confirmed the substance in Oden's possession was approximately 12 grams of methamphetamine.

## II. DISCUSSION

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." And the Supreme Court has repeatedly emphasized "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. U.S.*, 389 U.S. 347, 357 (1967) (citations omitted) (quoting *U.S. v. Jeffers*, 342 U.S. 48, 51, 72 (1951)) (internal quotation marks omitted). In *U.S. v. Perez*, the Eleventh Circuit identified three broad categories of police-citizen encounters helpful for conducting Fourth Amendment analysis: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." 443 F.3d 772, 777 (11th Cir. 2006).

The first category of police-citizen encounters encompasses voluntary conversation between an officer and a citizen. *Id.* The Supreme Court has held that "mere police questioning does not constitute a seizure" and "even when officers

have no basis for suspecting a particular individual, they may generally ask questions of that individual." *Florida v. Bostick*, 501 U.S. 429,434–435 (1991). Therefore, such voluntary encounters do not constitute a "seizure" for Fourth Amendment purposes.

The second category of police-citizen encounters encompasses brief seizures or investigatory detentions, which do constitute a "seizure" for Fourth Amendment purposes. *Perez*, 443 F.3d at 777. An encounter rises to this level "'only when, by means of physical force or a show of authority, [a person's] freedom of movement is restrained.'" *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997) (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 555 (1980)).

These encounters within the second category of police-citizen encounters are often referred to as a "*Terry* stop." *See, e.g., U.S. v. Sharpe*, 470 U.S. 675, 691 (1985) ("a *Terry* stop does not constitute the sort of arrest that the Constitution requires be made only upon probable cause.").  In *Craig v. Singletary*, the Eleventh Circuit explained, "[t]he applicable test manifestly is not a subjective one. Instead, a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a

reasonable person would have believed that he was not free to leave." 127 F.3d at 1041. (Internal quotations omitted).

Here, the law enforcement officers were patrolling a high-crime area when they observed an adult man, wearing a backpack, riding a bicycle into the woods. The officers then circled around to the location where they expected the man to exit, and approached him to ask him his purpose for being in the woods. The officers almost immediately recognized the individual as Mr. Oden, someone they had previously encountered and knew was a convicted felon: Lieutenant Whatley knew Mr. Oden had previously had a firearm in his vehicle when Whatley arrested him for driving under the influence, and Chief Johnson had both encountered Mr. Oden and heard rumors that he was associated with individuals suspected of shooting firearms and selling narcotics.

Despite Mr. Oden's reputation, the officers did nothing to restrain Mr. Oden–either through the use of force or through a show of authority. Chief Johnson merely asked Mr. Oden what he was doing in the woods and whether he had a firearm on his person. The officers did not seize or detain Mr. Oden simply by approaching or questioning him; a reasonable person would have believed that he was free to leave the conversation.

However, as soon as Chief Johnson asked Mr. Oden if he had a firearm, Mr. Oden suddenly shifted his hands towards his waistband. Chief Johnson reacted by grabbing and restraining Mr. Oden's wrist. Because a reasonable person would believe that he was not free to leave the encounter at that point, the court finds that a seizure occurred for Fourth Amendment purposes the moment Chief Johnson grabbed Mr. Oden's wrist.

The next question is whether the seizure was justified by reasonable suspicion that Mr. Oden was involved in criminal activity. *See U.S. v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (officer may conduct a *Terry* stop to investigate a reasonable suspicion of criminal activity)). To justify such a seizure, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

When Chief Johnson grabbed Mr. Oden's wrist, the officers knew they were in a high-crime area, Mr. Oden was a convicted felon, Mr. Oden was associated with firearms, Mr. Oden had a bulge in his front pocket, Mr. Oden was acting nervously, and Mr. Oden was moving his hands suddenly toward what the officers feared was a gun. Based on the totality of this information, which the officers have

specifically and clearly articulated, the court finds that Chief Johnson had reasonable suspicion that Mr. Oden was involved in criminal activity.

The court, therefore, finds that the officers seized Mr. Oden according to the "narrowly-drawn authority" permitting "a reasonable search for weapons for the protection of the police officer" because they had "reason to believe that [they were] dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. And because the officers discovered the concealed firearm in Mr. Oden's pocket and the methamphetamine in his hand during that lawful seizure, the court will not suppress the evidence of those items.

Further, once the officers knew that Mr. Oden, a convicted felon, possessed a firearm and methamphetamine, the officers had probable cause to place Mr. Oden under arrest. Therefore, their search of Mr. Oden's pouch and backpack was a lawful search incident to his arrest, and the court will not suppress the methamphetamine, plastic bags, and scales found within them.

## III. CONCLUSION

The court concludes that Mr. Oden's motion to suppress is due to be DENIED because the evidence was discovered during a lawful investigatory

seizure, and during a lawful search of Mr. Oden's belongings incident to his arrest.

The court will enter a separate Order consistent with this Memorandum Opinion.

DONE this 20th day of March, 2018.

_____

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE